STATE OF MAINE                              UNIFIED CRIMINAL COURT
KENNEBEC, ss.                               AUGUSTA
                                            DOCKET NO. CD-CR-18-2041


STATE OF MAINE


v.                                          **ORDER ON DEFENDANT'S**
                                            **MOTION TO SUPPRESS**


ALEXANDER LAPIERRE,
        Defendant


        This matter came to the attention of the undersigned on January 7, 2019 with respect to the Defendant's Motion to Suppress filed December 20, 2018. Defendant sought to suppress all statements Defendant may have made to law enforcement on the day in question as well as "all out of Court identifications of Defendant and any observations made of the Defendant subsequent to the initial investigatory stop" upon grounds that such statements were made in violation of Defendant's *Miranda* rights as well as because said statements were not made voluntarily.[1] The defense also claimed that the arresting officer made "an extra-territorial stop" in violation of 30-A M.R.S. § 2671 and Winslow, Me. Code §2-44 (2010) After hearing, reading the post-hearing memoranda of counsel, and watching the nearly three hour video demonstrating the interaction between the arresting officer and the Defendant as well as the officer at the police station, the Court makes the following Findings of Fact and Conclusions of Law upon which the **Order** set forth below is based:

        1.    The Defendant is charged with Operating After Revocation, Class C, as well as Violation of a Protective Order, Class D.

        2.    Officer Christianson of the Winslow Police Department (hereinafter "Officer Christianson") has approximately eleven years of experience in law enforcement. He was on duty in uniform and driving a marked cruiser on October 2, 2018 at approximately 3:30 p.m. when he received a message from a fellow Winslow police officer who was off-duty and located in Winslow. The off-duty officer inquired of the other officer whether there was a protection from abuse order in place against the Defendant. The off-duty officer believed Defendant was with a woman who was the subject of a protection order.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966). Any challenge to the voluntary nature of the statements was withdrawn at the hearing.

3. The officer ran the Defendant's record and learned the Defendant was subject to a protection order prohibiting contact between Defendant and one Meghan Hall and also that Defendant's motor vehicle license had been revoked.

4. The off-duty officer believed he had witnessed the Defendant operating a motor vehicle after Defendant had driven off from an establishment in Waterville by himself. The off-duty officer after learning of the above provided Officer Christianson with the motor vehicle license plate number of the vehicle that Defendant was operating. The motor vehicle came back registered to Ms. Hall. Meanwhile the off-duty officer followed the Defendant. The Defendant left the City of Winslow and entered the City of Waterville.

5. The off-duty officer asked officer Christianson to go to the 5 Broad Street, Waterville address to which the officer suspected the Defendant had driven.[1] Officer Christianson went to the address and in fact saw a parked vehicle that matched the description of the vehicle the off-duty officer had witnessed being driven by Defendant.

6. Officer Christianson knocked on the door on two occasions; on the second occasion the Defendant, who officer Christianson knew from prior experience with Defendant, answered the door. The Defendant was speaking on cell phone to Ms. Hall. Officer Christianson told the Defendant the Defendant was violating a protection order by being at the residence. The Defendant told the officer he was speaking with Ms. Hall and that the protection order had "been dropped." Officer Christianson told Defendant the officer would take him to the Winslow Police Department and "figure things out." The officer told Defendant he had to put handcuffs on Defendant "by policy" and arrested Defendant for violating the protection order and operating a motor vehicle after his license had been revoked without incident. The Defendant was generally cooperative throughout his interaction with Officer Christianson.

6. On the way to the police station the Defendant and Officer Christianson engaged in conversation. The officer did not read Defendant his *Miranda* rights. Officer Christianson explained at hearing that he had not read Defendant his *Miranda* rights because he did not intend to ask Defendant any questions, believing that he had already witnessed Defendant violating the protection order by conversing with Ms. Hall over the telephone and that the off-duty officer had already witnessed the Defendant operating a motor vehicle with a revoked license and being with Ms. Hall. The officer informed Defendant someone had seen him driving even though Defendant had initially denied operating a motor vehicle. The Defendant eventually acknowledged that Ms. Hall and he had been shopping and that "it was stupid" for him to have driven home.

7. Officer Christianson called the courthouse to ascertain whether the protection order had in fact been "dropped." The officer learned that although a

---

[1] The address was that of Ms. Hall.

motion had been filed to "drop" the order, the order was still in full force and effect.

8. Officer Christianson advised the Regional Dispatch Center that he was proceeding to 5 Broad Street in Waterville in connection with the Defendant operating a motor vehicle and also apparently having contact with Ms. Hall in violation of the protection order. The officer was told that no Waterville police officer was immediately available to respond to the situation.

9. The Court determines that Officer Christianson, or someone at the Winslow Police Department, should have read Defendant his *Miranda* rights before having discussions with the Defendant once Defendant was arrested and put in handcuffs. Even though Officer Christianson did not pose specific questions to the Defendant, the officer made statements to him that the officer should have known were likely to elicit incriminating responses from the Defendant. The Court finds no bad faith on the part of Officer Christianson, but the fact remains that after the officer summarized the evidence against the Defendant to the Defendant, the officer should have realized that the Defendant would likely respond, and potentially in an incriminating manner. Accordingly, all statements made by Defendant **after he was arrested and handcuffs applied,** as exhibited at approximately 11:40 on the video, are **inadmissible** as part of the State's case in chief, including any incriminating statements the Defendant made while at the Winslow Police Department.[3]

10. With respect to the argument that Officer Christianson acted outside the scope of his authority by travelling to Waterville from Winslow and effecting the arrest of Defendant, the undersigned acknowledges that the powers of law enforcement officers are governed by 30-A M.R.S. § 2671(2). As the State points out, however, there are numerous exceptions to the general rule that a police officer has no authority in criminal or traffic infraction matters outside the limits of the municipality in which they are appointed, *see* § 2671(2)(A-F). It is subsection 2(E) that applies here.

11. In this case the Court finds Officer Christianson acted reasonably and within the confines of the law when he travelled from Winslow across the bridge to Waterville to 5 Broad Street to investigate the information provided to him by a fellow police officer that Defendant was in the midst of committing a violation of a protection order, a Class D misdemeanor, and also committing a Class C felony, Operating After Revocation. The "fresh pursuit" in this case could hardly had been "fresher." Officer Christianson proceeded to Waterville from Winslow immediately after receiving the information from his fellow off-duty officer. Christianson after checking with the Regional Dispatch Center believed there was no Waterville officer available to drive to Broad Street. Christianson located the

---

[3] The State argues in its brief that essentially all statements made by Defendant were volunteered and not in response to any questioning by law enforcement. The undersigned disagrees with this position, **with the exception that the statements Defendant made to his mother while at the police station are admissible as the statements were entirely voluntary by Defendant and had no connection to any discussions the Defendant had with law enforcement.**

Defendant mere minutes after arriving at the Broad Street address, and seconds later the Defendant acknowledged to Officer Christianson that he was on the cellphone with Ms. Hall, a violation of the protection order. The officer quickly and efficiently took the Defendant into custody and returned to Winslow.

12. The undersigned has carefully read *State v. Turner*, 2017 ME 185, and does not find it to support defense counsel's contention that Officer Christianson violated the law. Moreover, the Law Court has "held on several occasions...that evidence obtained from an extraterritorial arrest based on probable cause should not *per se* be excluded." *State v. Jolin*, 639 A.2d 1062, 1064. Here the officer went to the address of the registered owner of the vehicle the Defendant was operating, operating while his license was revoked. The officer shortly after arriving at the residence encountered the Defendant speaking on a cellphone to the owner of the vehicle, Ms. Hall, a person who had an active protection order against the Defendant. The officer quickly arrested the Defendant, and minutes later the Defendant and the officer were at the Winslow Police Department. In short, contrary to defense counsel's argument, the officer hardly "went into Waterville to ferret out crime and violated the extraterritorial prohibition in Maine law."

13. For the reasons stated above the Motion to Suppress is **granted in part and denied in part.**

Date: 3/6/19

BY _____
**Robert E. Mullen, Deputy Chief Justice**
**Maine Superior Court**

4